PLATISA *v.* INLAND STEEL COMPANY.

[No. 15,396.   Filed April 19, 1935.]

*N. T. Stepanovich,* for appellant.

*William J. McAleer, Francis J. Dorsey, James J. Clark,* and *William L. Travis,* for appellee.

CURTIS, J.—On January 25, 1933, the appellant filed his application before the Industrial Board of Indiana for the adjustment of his claim for compensation against the appellee, based upon an alleged disability as the result of an accident arising out of and in the course of his employment by the appellee. To this application the appellee filed a special answer based upon an alleged lack of notice to it, which answer it will not be necessary to notice herein for the reason that the award was in favor of the appellee upon other grounds. The single member of the Board made an award against the appellant who prayed and was granted a review by the full board. That part of the finding of the full board that is material to be set out herein is as follows:

"And the Full Industrial Board having heard the argument of counsel, having reviewed the evidence and being duly advised therein, now finds for the defendant on plaintiff's application for the adjustment of a claim for compensation filed with the Industrial Board on January 25th, 1933; that the plaintiff suffered no disability as the result of any accident arising out of or in the course of his employment for the defendant."

The order followed the finding and also provided that the appellant pay the costs of the proceedings.

From the above award the appellant prayed and perfected this appeal, assigning as error that the award (order) of the full board is contrary to law.

The appellee earnestly insists that the appellant's brief is defective in many particulars pointed out and that by reason thereof no questions are presented for review. The most serious objections raised to the brief are, first, that the condensed recital of the evidence fails completely to abstract the evidence of one of the witnesses and one of the exhibits and, secondly, that under the propositions, points, and authorities portion of his brief the appellant has stated mere abstract propositions of law with authorities in support of them but with no application made to the instant case. The defect as to the evidence has been pointed out by the appellee but not supplied. This the appellee had a right to do. Where the error relied upon for reversal requires a consideration of all of the evidence, as it does in the instant case, the defect pointed out by the appellee becomes at once serious. The appellee is correct in the main as to the other defect. Since this is a Workmen's Compensation case we have, however, concluded to read the transcript of the evidence and to decide the case upon the merits, giving the appellant the fullest possible benefit of the "good faith attempt rule."

There was evidence before the board that the appellant had been employed by the appellee for a number of years and that he was a steady worker and always in good health. On January 27, 1931, while working as a carpenter he was ordered by his foreman to erect a scaffold inside a blast furnace stove. The witness William H. Fulwider who said he was a test engineer in charge of maintenance of all meter and meter equipment in power and electrical departments and in connection with his work kept an

hourly record of the temperature, testified that his records showed an outside temperature on January 27, 1931, as follows: Starting at 8 o'clock A. M. 40 degrees above zero Fahrenheit and ranging between that and 51 degrees at 1 o'clock in the afternoon. These temperatures were out of doors temperatures and were taken and recorded he said about two blocks from the blast furnace stove in question. The witness Robert Jones testified that he was in charge of the rebuilding of the blast furnace stove in question on the 27th of January, 1931, and that he had immediately under his charge that day for that purpose 12 bricklayers and laborers all of whom including himself were in the stove in question and that the temperature therein was between 50 and 60 degrees Fahrenheit and that said bricklayers and laborers went into the stove at 8 o'clock in the morning and remained therein until 12 o'clock noon. It is the appellant's contention that he was ordered to hurry with his work inside the stove so as not to delay the bricklayers and that he became overheated and covered with perspiration and then was ordered to do other work outside the stove where it was windy and where the temperature as he says was about zero. His opinion as to the outside weather differed a matter of some 40 to 49 degrees from the record testified to by Fulwider. The board had the right to believe either one of these witnesses as to the weather and it evidently adopted the evidence of Fulwider. The fact remains, however, that the appellant became sick about 11:30 in the morning and went home where he developed influenza and pleurisy and bronchial pneumonia which kept him in bed for some time. He returned to work March 2, 1931, being assigned light work. On May 28, 1931, Dr. Parramore examined him and diagnosed his condition as advanced pulmonary tuberculosis. The appellant at that time gave

the doctor a history of coughing since January follow-
ing the "flu." On October 29, 1931, the appellant was
admitted as a patient in the Lake County Sanitarium
where Dr. Parramore is in charge. The appellant was
at the Sanitarium at the time of the hearing before
the board, disabled from work. Dr. Parramore thinks
he may live a number of years under suitable care. The
evidence of this doctor who specializes in tubercular
diseases, and who was called by the appellant was as
follows: In a hypothetical question asked him which
set out the conditions under which the appellant con-
tends that he worked on the 27th day of January, the
question closed as follows: "Would you say whether or
not the condition which you found could be caused
either directly or indirectly from the exposure to which
he was subjected on January 27, 1931." The answer
was as follows: "In the first place there must be a
tuberculosis infection present, not necessarily the
disease, and anything that will lower the resistance of
an individual will tend to activate an old tuberculosis."
Question: "Now doctor, the circumstances which I have
related in this hypothetical question, would the condi-
tion, or could the condition of influenza, bronchitis and
pleurisy be a direct result of such exposure?" Answer:
"You are not speaking of tuberculosis?" Question: "Am
speaking of the acute condition." Answer: "I do not
know what this exposure was or anything of that kind.
I do not know anything about that, but I do know that
any infection can be brought on by lowering resistance.
I think that would answer the question. The man's
resistance had been lowered, then it is possible." Ques-
tion: "Does it require any great change from one tem-
perature to another to bring on such a condition, to
lower the resistance? I mean, doctor, may I ask it this
way—How much change of temperature would you say
was necessary to bring on a condition by exposure or

draft of influenza bronchitis?" Answer: "I can't answer that." Dr. Turbow who was the family physician was also called by the appellant. His evidence showed that he made 3 or 4 calls upon the appellant at his home immediately after the appellant's illness began. He found appellant in bed with a temperature and slight painful cough, and diagnosed it as influenza bronchitis or pneumonia and pleurisy. The patient gave a history of sudden pain and not feeling good and going home on account thereof. This doctor was also asked on his main examination a hypothetical question, much the same as that asked Dr. Parramore. The closing part of the question was as follows: "What in your opinion would you say doctor could be the cause of his present condition? Could it be that sudden change of temperature from hot to cold, assuming that he had been perfectly healthy before that—what would you say would be the result of his present condition?" Answer: "I want to be informed which one—the acute condition or the second condition of tuberculosis." Question: "The second condition, can be traced." Answer: "I do not understand the question." Question: "You understand the facts?" Answer: "I understand." Question: "Do you, in your opinion, believe that this man's present this hypothetical person, his present condition of tuberculosis can be traceable to that exposure." Answer: "I still can not understand your question. Now, if the question is whether that, the acute condition is due to exposure I would say yes. The secondary condition of tuberculosis would be a development or an outcome of that condition of what I diagnosed as pleurisy. It could be, yes, but I could not say that the condition of tuberculosis is due to the exposure. In other words, what I mean to say, you can not jump. If it is a continuous process where a man is exposed and it does not have to be a very

marked degree from heat to cold. A man who is per-spiring and any exposure of a draft is liable to give him a pleurisy and a cold and pneumonia or influenza. I would say yes, the exposure would give him an acute condition as the time when I seen him. The secondary condition of tuberculosis, it could be a development of the first one, a development of the pleurisy with influenza pneumonia. Is this—am I answering the question all right?" Question: "Yes, taking in consideration the further fact that this man never felt well after this exposure and this siege of illness and continually complained of pains in his chest and assume further, Doctor, that four months thereafter he was examined and his condition was diagnosed as tuberculosis, could you say then, that it is possible that this was the direct cause?" Question: "Dr. Turbow, is it possible, that this pleurisy that this man had when you examined him the first time, might subsequently have developed into tuberculosis?" Answer: "Possible."

There was no medical testimony other than that of the two doctors above named. We have set out the conditions under which the appellant worked as contended for by both sides. Other evidence by the witnesses for each party is largely cumulative of the evidence we have detailed and we do not deem it necessary to lengthen this opinion by abstracting it.

The question for the Industrial Board to decide was whether or not the appellant suffered a disability as the result of an accident arising out of and in the course of his employment by the appellee. This was a question of fact for their determination which they determined against the appellant. The question for this court to decide is whether or not there is any competent evidence or legitimate inferences that can be drawn from such evidence to sustain the finding of the board. If there is such evidence or such infer-

ences then the award of the board should be affirmed, otherwise reversed. The disability claimed by the appellant is "total disability from tuberculosis." The strongest evidence of the doctors is that the present condition of the appellant "could possibly" be considered as resulting from the working conditions imposed upon the appellant on the 27th day of January, 1931, by the appellee as shown by the appellant's evidence. The working conditions shown by the appellant were sharply controverted by the evidence of the appellee which we have set out. Under all of these circumstances we cannot say that the award of the full board is contrary to law based upon the contention that there is no competent evidence to sustain it.

The award is affirmed.